1
2
3
4
5
6
7
8             IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   PHANHAHA XABANDITH,[1]

11            Petitioner,              2:09 - cv - 2550 - LKK TJB

12      vs.

13   FRANCISCO JACQUEZ,

14            Respondent.             ORDER FINDINGS AND

15                                    RECOMMENDATIONS

16   _____/

17       Petitioner, Phanhnha Xabandith, is a state prisoner proceeding, *pro se*, with a petition for

18   writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner is currently serving an aggregate

19   determinate sentence of thirty years four months in state prison after a jury convicted him of

20   assault with a deadly weapon, shooting from a motor vehicle, two counts of possession of an

21   assault weapon, three counts of being a felon in possession of a firearm, and a sentencing

22   enhancement for committing the crime for the benefit of a street gang.  The jury also found true a

23   sentencing enhancement that Petitioner personally and intentionally discharged a firearm causing

24

25       [1]      The caption in this case incorrectly spells Petitioner's first name.  His name is
26   correctly spelled "Phanhnha." The Clerk shall be ordered to change the caption to correctly
     reflect Petitioner's name.

                                          1

great bodily injury for which Petitioner was sentenced to an additional and consecutive indeterminate term of twenty-five years to life.  Petitioner raises seven claims in this federal habeas petition; specifically: (1) Petitioner's right to confront the witnesses against him was violated when the victim testified that he recognized Petitioner from a photo lineup "because his friend Kelly said so" ("Claim I"); (2) the court failed to instruct the jury that his accomplices wife, Lani Chann, who testified for the prosecution, was an accomplice as a matter of law ("Claim II"); (3) "sentencing issue" with regard to the enhancement for personal discharge of a firearm causing great bodily injury ("Claim III"); (4) ineffective assistance of counsel for failing to obtain a declaration from Mrs. Chann's attorney that she was testifying in order to avoid criminal charges, a "secret deal" ("Claim IV"); (5) ineffective assistance of counsel for failing to question Mrs. Chann about the secret deal ("Claim V"); (6) ineffective assistance of counsel due to counsel's failure to file a motion to suppress evidence, including the gun used in the shooting, found in an apartment ("Claim VI"); and, (7) failure to instruct the jury that in order to find Petitioner guilty of shooting from a motor vehicle they must find proof of every element of the crime beyond a reasonable doubt ("Claim VII") . For the reasons stated herein, the federal habeas petition should be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

One night in March 2004, Lani Chann was driving home from a bar with a friend named Kelly Visamoun. Sang Saelee, the father of Visamoun's baby, pulled up next to them on the freeway and pointed a gun at them. When Lani Chann got home, she told her husband, Tim, what had happened, and he became angry.

That evening, the Channs went to a Taco Bell three or four blocks away from the house where Saelee and Visamoun lived. While they were there, defendant arrived in a pickup truck with another person. Defendant waved at the Channs, they walked toward his truck, and Tim Chann got in the driver's seat while defendant lay

---

[2]     The factual and procedural background is taken from the California Court of Appeal, Third Appellate District decision on direct appeal from May 2007 and filed in this Court by Respondent on April 22, 2010 as Lodged Doc. No. 2 (hereinafter referred to as the "Slip Op.").

in the truck bed. Tim told Lani to go home, but she followed them instead.

The details of what happened when Lani followed them will be set forth below, in connection with defendant's argument on the accomplice issue. For now, suffice it to say the evidence supported the conclusion that Tim Chann drove to the house where Saelee lived, and defendant popped up from the truck bed and fired over 20 rounds from a rifle toward the house, striking one man in the leg.

Later that night, police, conducting a probation search of an apartment after receiving a noise complaint, found five firearms in a closet. Ballistics evidence showed that one of the firearms in the closet was used in the shooting.

Defendant was charged with attempted murder, assault with an assault weapon, shooting from a motor vehicle, possession of an assault weapon (two counts), and being a felon in possession of a firearm (three counts). The jury found defendant not guilty of attempted murder but guilty of the remaining charges and also found various enhancement allegations true. The trial court sentenced him to an aggregate determinate term of 30 years 4 months in prison consecutive to an indeterminate term of 25 years to life.

## II. PROCEDURAL HISTORY

After Petitioner's conviction, he directly appealed to the California Court of Appeal, Third Appellate District.  In his direct appeal Petitioner raised, amongst other claims not raised in this petition, his claim that the trial court failed to instruct the jury that Lani Chann was an accomplice as a matter of law (Claim II in the current Petition).  The Court of Appeal affirmed Petitioner's conviction.  *See* Slip Op.  Petitioner's petition for direct review in the California Supreme Court was denied.  *See* Lodged Doc. No. 4 (California Supreme Court Denial Order). Thereafter, Petitioner filed a state petition for habeas corpus in California Superior Court for the County of Sacramento.  *See* Lodged Doc. No. 5 (Petition for Writ of Habeas Corpus).

In his state petition, Petitioner raised each of the claims that he now raises in his federal petition, including his claim that the jury should have been instructed that Chann was an accomplice.  The Superior Court, in a written order, concluded that Petitioner was barred from raising his claims, other than his ineffective assistance of counsel claims, in a state habeas

1  petition because they were either (1) raised on direct appeal or (2) were based on the trial record

2  and should have been brought on direct appeal.  In determining Petitioner's claims were barred,

3  the Superior Court relied upon the California Supreme Court's decisions in *In re Waltreus*, 62

4  Cal.2d 218 (1965), *In re Dixon*, 41 Cal.2d 756 (1953), and *In re Harris*, 5 Cal.4th 813 (1993).

5  The Superior Court went on to conclude that Petitioner's three ineffective assistance of counsel

6  claims lacked merit and denied relief.  *See* Lodged Doc. No. 6 (Superior Court Habeas Denial

7  Order).

8         Petitioner then filed petitions for habeas corpus with the California Court of Appeal and

9  the California Supreme Court.  Both were summarily denied.  The California Supreme Court's

10 order denying the petition stated as follows: "The petition for writ of habeas corpus is denied.

11 (See In re Swain (1949) 34 Cal.2d 300, 304.)"  Lodged Doc. No. 10.   The California Supreme

12 Court has cited that page of *In re Swain* for the proposition that a petitioner must allege why he

13 could not have raised particular claims on direct appeal.

14        Next, Petitioner filed the instant action seeking federal relief in a petition for habeas

15 corpus pursuant to 28 U.S.C. § 2254.  Petitioner filed an amended petition on November 20,

16 2009.  (ECF No. 12).  Thereafter, Respondent moved to dismiss the petition on the grounds that

17 it was untimely.  (ECF No. 17).  That motion was denied.  (ECF Nos. 24 & 27).

18                          III. APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

19        An application for writ of habeas corpus by a person in custody under judgment of a state

20 court can only be granted for violations of the Constitution or laws of the United States. *See* 28

21 U.S.C. § 2254(a); *see also Peltier v. Wright*, 15 F.3d 860, 861 (9th Cir. 1993); *Middleton v.*

22 *Cupp*, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing *Engle v. Isaac*, 456 U.S. 107, 119 (1982)).

23 Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism

24 and Effective Death Penalty Act of 1996 ("AEDPA") applies. *See Lindh v. Murphy*, 521 U.S.

25 320, 326 (1997). Under AEDPA, federal habeas corpus relief is not available for any claim

26 decided on the merits in the state court proceedings unless the state court's adjudication of the

4

1    claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of,

2    clearly established federal law, as determined by the Supreme Court of the United States; or (2)

3    resulted in a decision that was based on an unreasonable determination of the facts in light of the

4    evidence presented in state court. *See* 28 U.S.C. § 2254(d); *Perry v. Johnson*, 532 U.S. 782, 792-

5    93 (2001); *Williams v. Taylor*, 529 U.S. 362, 402-03 (2000).

6         In applying AEDPA's standards, the federal court must "identify the state court decision

7    that is appropriate for our review." *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). "The

8    relevant state court determination for purposes of AEDPA review is the last reasoned state court

9    decision." *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008) (citations omitted). "Where

10   there has been one reasoned state judgment rejecting a federal claim, later unexplained orders

11   upholding that judgment or rejecting same claim rest upon the same ground." *Ylst v.*

12   *Nunnemaker*, 501 U.S. 797, 803 (1991). To the extent no such reasoned opinion exists, courts

13   must conduct an independent review of the record to determine whether the state court clearly

14   erred in its application of controlling federal law, and whether the state court's decision was

15   objectively unreasonable. *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000). "The question

16   under AEDPA is not whether a federal court believes the state court's determination was

17   incorrect but whether that determination was unreasonable—a substantially higher threshold."

18   *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410). "When it is

19   clear, however, that the state court has not decided an issue, we review that question *de novo*."

20   *Reynoso v.Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006) (citing *Rompilla v. Beard*, 545 U.S.

21   374, 377 (2005)).

22                              IV. ANALYSIS OF PETITIONER'S CLAIMS

23         1. Procedural Default

24         Respondent has asserted that Claims I, II, and VII are procedurally barred.  *See* Answer at

25   ¶ 4.  As discussed above, Petitioner failed to raise these claims on direct review from his

26   conviction and, in ruling on Petitioner's state habeas petition, the Superior Court determined that,

under California procedural rules, the claims should have been brought on direct appeal and, thus, did not address the merits of Petitioner's claims.

Procedural default is an affirmative defense, and the state has the burden of showing that the default constitutes an adequate and independent ground. *Insyxiengmay v. Morgan*, 403 F.3d 657, 665-66 (9th Cir. 2005); *Bennett v. Mueller*, 322 F.3d 573, 585-86 (9th Cir. 2003). Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. *Bennett*, 322 F.3d at 585-86. "The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule." *Id.* at 585. If the petitioner meets his burden, the ultimate burden to prove adequacy goes back to the state. *Id.* Thus, "it is the law of this circuit that the ultimate burden is on the state, not the petitioner, to show that a procedural state bar was clear, consistently applied, and well-established at the time the party contesting its use failed to comply with the rule in question." *Insyxiengmay*, 403 F.3d at 666.

In this case, Respondent met his initial burden of adequately pleading the "existence" of a state procedural bar when he asserted in his answer that "Any claims not properly presented in state court under state rules are barred . . . as procedurally defaulted" and then argued in his memorandum of points and authorities in support of his answer to the same effect. *See* Answer at ¶ 4, p. 6, 11; *Mueller*, 322 F.3d at 586. In Petitioner's traverse he disputes Respondent's conclusion that the claims are procedurally barred. Traverse at 2. Petitioner does not cite to authority, but asserts the failure to bring the claims on appeal is a result of ineffective assistance of appellate counsel. *Id.* at 2, 13-15; *see id.*, Ex. A (Letter from Petitioner's appellate counsel to Petitioner stating he would not raise certain claims on appeal, including the claims Respondent now claims are procedurally barred.). As such, Petitioner has met his burden of placing the procedural bar in issue and the ultimate burden now rests upon Respondent to show that the procedural bar is clear, consistently applied, and well-established. *Insyxiengmay*, 403 F.3d at

6

1    666.

2        Respondent has not met that burden.  In conclusory fashion, Respondent maintains that

3    Petitioner's claims are procedurally barred.  *See* Answer at 6.  Respondent, however, cites to no

4    authority from which this court could conclude that the procedural bar in question is adequate,

5    independent, and consistently applied.  As discussed above, in finding Petitioner's claims

6    procedurally barred, the Superior Court relied upon *In re Dixon*, 41 Cal.2d 756 (1953), and *In re*

7    *Waltreus*, 62 Cal.2d 218 (1965).  *Waltreus* does not form a basis for procedural default in federal

8    court.  *Hill v. Roe*, 321 F.3d 787, 789 (9th Cir. 2003) (A *Waltreus* denial is neither a ruling of

9    procedural default nor a ruling on the merits.  *Waltreus* merely bars relitigation in state habeas

10   proceedings of claims already litigated on direct appeal.); *Carter v. Giurbino*, 385 F.3d 1194,

11   1198 (9th Cir. 2004).

12        *Dixon*, likewise, without additional evidence from Respondent that it is adequate,

13   independent, and consistently applied, does not support barring Petitioner's claims.  In *Park v.*

14   *California*, 202 F.3d 1146, 1152-53 (9th Cir. 2000), the Ninth Circuit concluded that *Dixon*, at

15   least as it was applied prior to 1998 and the California Supreme Court's decision in *In re*

16   *Robbins*, 18 Cal.4th 770 (1998), was not independent of federal law.  The *Park* court expressed

17   no opinion as to whether the changes to the *Dixon* rule announced by the California Supreme

18   Court in 1998 would render the rule independent of federal law in the future.  *Id.* at 1153.  Since

19   then the Ninth Circuit has not addressed the issue.  Without more, Respondent has failed to show

20   that the *Dixon* rule, post-1998, is an adequate and independent state procedural rule that would

21   bar Petitioner from raising his claims in federal court.  As such, Petitioner's claims are not

22   procedurally defaulted.

23        2.  Claim I

24        In Claim I, Petitioner alleges that his confrontation rights were violated when a witness

25   testified that he had only picked Petitioner out of a photo line-up because someone else had told

26   him Petitioner was the shooter.  The witness, Khampheth Khanhnhay, twenty-one years old at the

7

1   time of trial, was barbecuing with his friends in the front yard of Saelee's house the night of the

2   drive-by shooting.  Rep.'s Tr. at 215.  Saelee was not home.  Sometime around ten p.m., as

3   Khanhnhay and his friends were barbecuing, Khanhnhay heard a gun cock.  *Id.* at 216.  As he

4   turned towards the street, Khanhnhay started hearing shots.  He saw a pick-up truck, but could

5   not see the driver.  *Id.* at 217.  A man was in the bed of the truck, shooting a rifle, but Khanhnhay

6   could only say that he thought the shooter was African-American, had slicked back hair, and was

7   skinny.  *Id.* at 217, 219.  Khanhnhay had a hard time seeing the assailants because it was "really

8   dark."  *Id.* at 218.  Khanhnhay, who was shot in the leg, could not identify the person who shot

9   him in court.  *Id.*

10         Several days after the incident, and after Khanhnhay had been released from the hospital,

11   he was interviewed at the police station and shown a photographic line-up.  *Id.* at 220.  He picked

12   a photo of Petitioner from the line-up as "sort of" looking like the shooter—he "couldn't really

13   tell it was him . . . it was just – just like a close description."  *Id.* at 221-22.  At trial, on cross-

14   examination, Khanhnhay admitted that, while he did not know Petitioner, he had seen him

15   before.  *Id.* at 225.  He also stated that Kelly, another person present at the house that night who

16   did not testify at trial, had told him that Petitioner was the one who had done the shooting.  *Id.*

17         Q:      Okay.  The guy that you point – the guy you picked out in
                   the picture matched somebody that somebody else had
18                 show you – Is that right? – besides the police?

19         A:      Yeah.

20         Q:      And they pointed to someone and said that's the guy who
                   did it right?
21
           A:      Yeah.
22
           Q:      And then you picked the picture of the guy that that other
23                 person told you?

24         A:      Uh, yeah.

25         Q:      In fact, when you look at this picture, the guy you picked
                   out doesn't even quite match your description, does he?
26

8

1           A:       Yeah.

2  *Id.* at 226-27.  Khanhnhay admitted that he did not really see the shooter, but that he had heard

3  Petitioner was responsible for the shooting and pointed Petitioner out because he wanted

4  whoever was responsible for the shooting to be arrested.  *Id.* at 229.  Petitioner claims that this

5  testimony violates his right to confront the witnesses against him because Khanhnhay was

6  essentially testifying to Kelly's statement that Petitioner had done the shooting and he was given

7  no opportunity to test the veracity of such statement.

8           Petitioner is not entitled to relief on this claim even if a constitutional violation occurred,

9  which is unlikely based on the record, because any potential error was harmless.  When a

10  petitioner seeks collateral relief from a state-court judgment, under most circumstances, the writ

11  can only be granted if an "error 'had substantial and injurious effect or influence in determining

12  the jury's verdict.'"  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993) (quoting *Kotteakos v.*

13  *United States*, 328 U.S. 750, 776 (1946)); *see Fry v. Pliler*, 551 U.S. 112 (2007) (holding that "in

14  § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-

15  court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht* . . .

16  whether or not the state appellate court recognized the error and reviewed it for harmlessness

17  under . . . *Chapman*").  The *Brecht* standard requires the writ to be granted only if, but for the

18  error, there is "a reasonable probability" that the jury would have reached a different result had

19  there been no error.  *Clark v. Brown*, 450 F.3d 898, 916 (9th Cir. 2006).

20          In the present case, the existence of additional evidence that Petitioner was the shooter,

21  other than the out of court statement by Kelly, would render any error harmless.  Lani Chann,

22  who was present with Petitioner and his accomplices shortly before the shooting occurred,

23  testified that she saw Petitioner get into the back of the pick-up truck.  Rep.'s Tr. at 97.  This,

24  combined with Khanhnhay's testimony that he saw someone shooting from the bed of the truck,

25  regardless of whether Khanhnhay could identify that person, establishes that Petitioner was the

26  shooter.  Moreover, Oudum Khounnha, another person present at the barbecue, testified that he

1  saw someone stand up from the bed of a truck and start shooting.  *Id.* at 187.  While Khounnha

2  could not identify the Petitioner as the shooter at trial, he, like Khanhnhay, had previously picked

3  Petitioner out of a photo line-up.  *Id.* at 192.  Though he also stated on cross-examination that

4  Kelly had told him that Petitioner was the shooter, on re-direct he clearly stated that he had

5  picked Petitioner from the line-up because he could identify Petitioner as the shooter.  Kelly had

6  only told him the shooter's name.  *Id.* at 209.  Based on the foregoing, any potential error was

7  harmless.  Petitioner is not entitled to relief on this claim.

8        3.  Claim II

9        In Claim II, Petitioner claims that the jury should have been instructed that Lani Chann

10  was an accomplice as a matter of law.  If Chann was an accomplice, her testimony would be

11  subject to California's rule requiring that accomplice testimony be corroborated.  *See* Cal. Penal

12  Code § 1111.  The California Court of Appeal concluded that there was no evidence adduced at

13  trial to support a conclusion that Chann was an accomplice.

14        Petitioner fails to state a claim which could form the basis for granting the writ.

15  Petitioner's challenge amounts to a disagreement with the appellate court's conclusion that

16  Chann was not an accomplice as defined by California law.   The federal writ of habeas corpus

17  can only be granted for a "violation of the Constitution or laws or treaties of the United States."

18  28 U.S.C. § 2254(a); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("A federal court may not

19  issue a write on the basis of a perceived error of state law.").  Petitioner fails to allege how the

20  failure to instruct the jury that Chann was an accomplice violated any constitutional right.  As

21  such, he is not entitled to relief on this claim.

22        4.  Claim III

23        Petitioner's ground three states "Sentencing Issue . . . Intentionally and personally

24  discharge a firearm. [Cal. Penal Code §§] 12022.53(b), (c), and (d)."  While Petitioner's claim is

25  not entirely clear, apparently Petitioner contends that the jury verdict was not clear as to which

26  subsection of the sentencing enhancement for use of a firearm the jury found Petitioner to have

violated.  Petitioner was sentenced to an additional term, to be served consecutively, of twenty-

five years to life for the enhancement.  California Penal Code § 12022.53 provides substantial

penalties for those who use a firearm in the course of conducting certain felonies.  For those who

simply use a firearm, the result is an additional term of ten years in prison.  *Id.*, subdivision (b).

Those who discharge a firearm in the commission of an enumerated felony are given an

additional twenty years in prison.  *Id.*, subdivision (c).  Finally, a felon who discharges a firearm

causing great bodily injury receives the most severe sanction, an additional sentence of twenty-

five years to life.  *Id.*, subdivision (d).

Petitioner urges the court to review the jury verdict form.  The verdict with regard to the

sentencing enhancement states as follows:

> It is alleged that, pursuant to subdivisions (b), (c), and (d) of Penal
> Code section 12022.53, that in the commission of the above
> offense, the defendant used, and intentionally and personally
> discharged a firearm, a Norinco Mac 90 7.62 X 39 caliber rifle, and
> thereby proximately caused great bodily injury to Khampheth
> Khanhnhay, not an accomplice of the defendant, within the
> meaning of Penal Code section 12022.53(d) and (e).

> We, the jury, find this allegation to be TRUE.

Clerk's Tr. at 250.  Based upon the verdict form, the jury unambiguously concluded that

Petitioner discharged a weapon causing great bodily injury, warranting the twenty-five year to

life sentence under section 12022.53, subdivision (d).  There is no error apparent, much less one

of constitutional dimension, in the jury's verdict.  As such, Petitioner is not entitled to relief on

this claim.

    5.  Ineffective Assistance of Counsel

In Claims IV, V, and VI, Petitioner alleges that his trial counsel was ineffective for

various reasons.  The Sixth Amendment guarantees effective assistance of counsel.  In *Strickland*

*v. Washington*, 466 U.S. 668 (1984), the Supreme Court articulated the test for demonstrating

ineffective assistance of counsel.  First, the petitioner must show that considering all the

circumstances, counsel's performance fell below an objective standard of reasonableness.  *See id.*

at 688.  Petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment.  *See id.* at 690.  The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the range of professional competent assistance.  *See id.*  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id.*

Second, a petitioner must affirmatively prove prejudice.  *See id.* at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  A reasonable probability is "a probability sufficient to undermine the confidence in the outcome."  *Id.*  The likelihood of a different result must be substantial, not just conceivable."  *Harrington v. Richter*, __ U.S. __, 131 S.Ct 770, 791, 178 L.Ed.2d 624 (2011).  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by defendant as a result of the alleged deficiencies . . . [i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  *Pizzuto v. Arave*, 280 F.3d 949, 955 (9th Cir. 2002) (citing *Strickland*, 466 U.S. at 697).  When analyzing a claim for ineffective assistance of counsel where a state court has issued a decision on the merits, a habeas court's ability to grant the writ is limited by two "highly deferential" standards.  *Premo v. Moore*, __ U.S. __, 131 S.Ct. 733, 740, 178 L.Ed.2d 649 (2011).  "When § 2254(d) applies," as it does here, "the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *see also Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002) ("Under § 2254(d)'s 'unreasonable application' clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied *Strickland* incorrectly.  Rather, it is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of his case in an objectively unreasonable manner." (citations omitted)).

a. Claims IV and V

In Claims IV and V, Petitioner raises ineffective assistance of counsel claims relating to a "secret" deal between the prosecutor and one of the prosecution's witnesses, Lani Chann. Petitioner claims that the prosecution made a deal with Chann whereby she would testify against Petitioner in exchange for reduced charges in an unrelated robbery case for which Chann was in custody at the time of her testimony. Petitioner also alleges that the prosecution agreed to not try Chann for crimes related to the drive-by shooting for which Petitioner was on trial. Specifically, in Claim IV Petitioner alleges that his trial counsel failed to obtain a declaration from Chann's attorney to prove the existence of the secret deal. In Claim V, Petitioner alleges his counsel was ineffective for failing to question Chann about the secret deal at a hearing on Petitioner's motion for a new trial. Petitioner raised these claims in his state habeas petition. The Superior Court concluded that Petitioner failed to establish a prima facie case for relief:

> Petitioner's first two ineffective assistance of counse claims . . . fail to state a prima facie claim for relief. Indeed, a review of the underlying file shoes that the trial court entered an order granting Lani Chann immunity. As a result, the allegations that counsel was ineffective for failing to uncover a secret agreement, by failing to get a declaration from Chann's attorney and by failing to question Chann, do not establish a prima facie claim for relief, because the agreement was on the record.

Lodged Doc. No. 6, at 2-3.

Chann, who had been in a romantic relationship with Petitioner from near the time of the shooting until his arrest, was subpoenaed to testify at his trial after she was extradited to California from Iowa on charges of robbery. Chann indicated that she intended to invoke her rights under the Fifth Amendment, and was granted derivative immunity from any prosecution stemming from her testimony. Rep.'s Tr. at 64. On direct examination, Chann readily admitted that she was receiving immunity for her testimony. *Id.* at 116-17. Chann denied that she would be receiving any special treatment on her robbery charge as a result of her testimony, or as a result of her testimony in another case against Saelee. *Id.* at 117, 136, 163. Petitioner's counsel

1  asked her about her potential reasons for agreeing to testify on cross-examination.  *Id.*

2      After Petitioner's conviction, he raised his argument that there was a secret deal between

3  Chann and the prosecution granting her not only immunity from evidence related to her

4  testimony, but also promising not to bring charges against her for the drive-by shooting and

5  dropping the unrelated robbery charges against her.  The trial court held an evidentiary hearing

6  on Petitioner's claim, at which Chann testified that there was no secret deal.  Chann testified that

7  she was under the mistaken belief that if she did not testify against Petitioner there was a

8  possibility similar charges would be brought against her.  *Id.* at 810.  This misunderstanding was

9  not the result of any interaction with the District Attorney's Office or law enforcement official.

10  *Id.* at 811.  Chann agreed that, outside of the immunity agreement, there were no additional

11  promises or deals made in exchange for her testimony.  *Id.* at 811-12.  Indeed, at the time of the

12  evidentiary hearing, Chann was serving time on a conviction stemming from the robbery charges.

13  *Id.* at 806.

14      Petitioner's claims fail because he cannot establish that his counsel's actions or inactions

15  fell below an objective standard of reasonableness or that he was prejudiced by any unreasonable

16  actions or inactions of counsel.  Petitioner's counsel repeatedly cross-examined Chann about the

17  existence of an additional agreement both at trial, *id.* at 136, 163, and at the evidentiary hearing

18  regarding the motion for a new trial, *id.* at 795.  There is simply no evidence that any additional

19  deal, besides the grant of immunity of which the jury was aware, existed between the prosecution

20  and Chann.  Petitioner is not entitled to relief on these claims.

21          b.  Claim VI

22      In his final ineffective assistance claim, Petitioner alleges his trial counsel was ineffective

23  for failing to make a motion to suppress evidence.  Particularly, Petitioner contends that his trial

24  counsel should have sought to suppress four guns recovered from an apartment, including the

25  gun that was used in the drive-by shooting.  Petitioner maintains that the search that recovered

26  the weapons was illegal because, while people present at the apartment admitted they were on

14

searchable probation, the officers did not have reason to believe that any of those on searchable

probation were actually residents of the apartment.  *See Motley v. Parks*, 432 F.3d 1072, 1074

(9th Cir. 2005) (en banc) ("[B]efore conducting a warrantless search pursuant to a properly

imposed parole condition, law enforcement officers must have probable cause to believe that the

parolee resides at the house to be searched.").

      In ruling on this Claim on Petitioner's state petition for habeas corpus, the Superior Court

stated as follows:

> Petitioner's third ineffective assistance of counsel claim . . .
> alleges that his counsel was ineffective for failing to file a motion
> to suppress.  He claims that the motion would have resulted in the
> firearms being suppressed.  He claims that the record showed that
> the officers could not have entered the apartment where the
> firearms were located because the person who met them at the door
> and told them he was on searchable probation also told them he did
> not know who lived in the apartment.  He claims that officers had
> no reason to search the apartment because they had no reason to
> believe that the man on searchable probation lived in the
> apartment.  However, Petitioner failed to allege facts that if proven
> would show that any motion to suppress should have been brought
> by counsel.  Specifically, he provided no facts showing that he had
> any reasonable expectation of privacy in the apartment where the
> firearms were found.  Instead, he simply alleged that a few
> witnesses gave statements to the police that petitioner lived in the
> apartment.  He does not, however, identify who these witnesses
> were and whether his counsel was aware of these witnesses.  Thus,
> he has not identified a basis upon which a motion to suppress
> would have been successful.  Petitioner's . . . claim for relief fails
> to state a prima facie claim for ineffective assistance of counsel.

Lodged Doc. No. 6, at 3.

      Petitioner cannot establish that he was prejudiced by the failure to bring such a motion

because the Superior Court reasonably concluded that the motion to suppress would not have

been granted.  "Fourth Amendment rights are personal rights which, like some other

constitutional rights, may not be vicariously  asserted." *Alderman v. United States*, 394 U.S. 165,

174 (1969); *see Brown v. United States*, 411 U. S. 223, 230 (1973); *Simmons v. United States*,

390 U. S. 377, 389 (1968); *Wong Sun v. United States*, 371 U. S. 471, 492 (1963).  "A person

who is aggrieved by an illegal search and seizure only through the introduction of damaging

evidence secured by a search of a third person's premises or property has not had any of his

Fourth Amendment rights infringed." *Rakas v. Illinois*, 439 U.S. 128, 134 (1978) (citing

*Alderman*, 394 U.S. at 174); *see also Jones v. United States*, 362 U.S. 257, 261 (1960).

As in the Superior Court, Petitioner fails to make more than a bare allegation that he was

a resident of the apartment in question.  In his petition, Petitioner states that there are a few

witnesses that gave statements to police that Petitioner was living at the apartment.  Pet. at 8.  He

does not, however, provide these witnesses identities, much less provide any evidence as to the

contents of these statements.  In Chann's testimony, she stated that the apartment was a place

people would just "come and go" and that a lot of people, including Petitioner, kept some clothes

there.  Rep.'s Tr. at 151-52.  Chann, who according to her testimony  was at one point on the

lease for the apartment, testified that no one stayed there full time.  *Id.*  The owner of the

apartment complex also testified that the apartment was rented to Petitioner's brother, but never

to Petitioner or Chann.  *Id.* at 407-08.  Without more, the Superior Court made a reasonable

determination that Petitioner likely did not have standing to challenge any Fourth Amendment

violation and that, as such, any motion to suppress was improvident.  Because Petitioner cannot

establish that a motion to suppress would have been successful, he fails to establish that he was

prejudiced by the failure to bring the motion and, as such, Petitioner is not entitled to relief on

this claim.

6. Claim VII

Finally, Petitioner claims instructional error with regard to the jury instruction for the

crime of shooting from a motor vehicle.  Specifically, Petitioner asserts that the jury was not

informed that they must find each and every element of the crime beyond a reasonable doubt.

Petitioner's claim lacks merit.

/ / /

/ / /

1      A challenge to a jury instruction solely as an error of state law does not state a claim

2 cognizable in a federal habeas corpus action.  *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991);

3 *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973).  To obtain federal collateral relief for errors in

4 the jury charge, a petitioner must show that the instruction by itself so infected the entire trial that

5 the resulting conviction violates due process.  *See Estelle*, 502 U.S. at 72; *Cupp*, 414 U.S. at 146-

6 47 (In order to prevail, a habeas petitioner must show the instructional error "by itself so infected

7 the trial that the resulting conviction violated due process" and not merely that the instructions as

8 given were "undesirable, erroneous, or even universally condemned.").  Additionally, the

9 instruction may not be judged in artificial isolation, but must be considered in the context of the

10 instructions as a whole and the trial record.  *See id.*  The court must evaluate jury instructions in

11 the context of the overall charge to the jury as a component of the entire trial process.  *See United*

12 *States v. Frady*, 456 U.S. 152, 169 (1982).

13      At Petitioner's trial, the jury was instructed with CALCRIM No. 220, which deals

14 specifically with the reasonable doubt standard.  That instruction, as relevant, states as follows:

15        A defendant in a criminal case is presumed to be innocent.  This presumption requires that the People prove each element of a crime

16        and special allegation beyond a reasonable doubt.  Whenever I tell you the People must prove something, I mean they must prove it

17        beyond a reasonable doubt. [¶] Proof beyond a reasonable doubt is proof that leaves you with an abiding conviction that the charge is

18        true.  The evidence need not eliminate all possible doubt because everything in life is open to some possible or imaginary doubt.

19

20 Clerk's Tr. at 204. While the specific instruction on shooting from a motor vehicle did not

21 include the term "reasonable doubt," it did list the elements of the crime that needed to be proven

22 by the prosecution.  *Id.* at 216.  Viewing this instruction together with the reasonable doubt

23 instruction, the instructions properly required the jury to find that the crime be proven beyond a

24 reasonable doubt, and no relief is available to Petitioner on this claim.

25 / / /

26 / / /

V. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that this matter shall hereinafter be captioned: PHANHNHA XABANDTIH, Petitioner vs. FRANCISCO JACQUEZ, Respondent.

For all of the foregoing reasons, IT IS HEREBY RECOMMENDED that the petition for writ of habeas corpus be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In any objections he elects to file, Petitioner may address whether a certificate of appealability should issue in the event he elects to file an appeal from the judgment in this case. *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

DATED:  December 20, 2011

TIMOTHY J BOMMER
UNITED STATES MAGISTRATE JUDGE

18